Joseph Life, J.
This is a proceeding under article 78 CPLR, wherein an order is sought annulling a decision made by respondent Board of Appeals of the Incorporated Village of Upper Brookville. Petitioners are the owners of real property situated wholly within the Incorporated Village of Upper Brookville designated on the Nassau County Land and Tax Map as Lots 812 and 887, in section 24, block B. Lot 887, the property involved in this proceeding, is situated in the easternmost por *578 ti-on of the village and its " easterly boundary constitutes a part of the dividing line between the village and an unincorporated area of the Town of Oyster Bay.
The decision attacked by this proceeding was rendered by respondent Board of Appeals after several hearings held on the petitioners’ application for a zoning permit. The permit was sought to enable petitioners to grade a portion of the aforementioned lot 887 and to remove excess soil resulting from the grading operation.
In March of 1963, officials of the Village of Upper Brookville became aware that an unauthorized' excavation was proceeding upon lot 887, and that sand and gravel were being removed therefrom. They notified the owners of the property who immediately terminated the operations. Petitioners claim that the excavation on lot 887 was inadvertent and resulted from the legitimate and authorized grading of property located in the unincorporated area of the Town of Oyster Bay, immediately adjoining the subject parcel, in preparation for the construction of an apartment house. They state that because of the illness and subsequent death of the engineer in charge, the contractor went beyond the line at which he should have stopped, dug into lot 887 and created the condition which now exists, a precipitous, bare sand hill. All of the parties hereto agree that this condition requires correction.
Petitioners, as a part of their application for a zoning permit, presented a plan whereby they proposed to regrade a portion of lot 887 by creating a more gradual slope than now exists upon the property, spreading topsoil and loam thereon and seeding same, to stabilize the embankment. The application was made to the Building Inspector of the village and pursuant to the provisions of the Zoning Ordinance, in due course came on to be heard by the Board of Appeals.
Mention should be made at this point of the procedure adopted by the respondents in connection with this application. The application was made pursuant to section 920.2 (2) of the Building Zone Ordinance of the village. Section 920.4 (5) requires the Building Inspector, whenever he finds that the work upon an application under section 920.2 (2) will affect an area larger than one-quarter acre, to refer the plans and application to the. Village Planning Board for review and report and further that the procedure in such cases will be the same as prescribed in section 830 for a building project. Section 830.5 requires the Planning Board to review plans and applications and to render its report thereon to the Board of Appeals within 30 days.
*579 Petitioners contend that the Planning Board did not perform its function properly in that it did not hear the entire application before rendering its report. This contention is without merit. The majority of the members of the Planning Board sat in joint session with the Board of Appeals at the first hearing held in the matter. This procedure was adopted to save time and was consented to by petitioners ’ counsel. The hearing was adjourned for the purpose of obtaining additional data, and was not reconvened until five months thereafter. At that time the Planning Board rendered its report. There is no requirement that the Planning Board hold a hearing in order to report upon the application, and this court finds that the participation of the Planning Board in the first hearing was unnecessary, and its participation in subsequent hearings was not required since that board is only an advisory body under this Zoning Ordinance. It could not issue the permit sought here and no relief can be obtained against it in this proceeding.
After the close of the three hearings had before the Board of Appeals, the said board rendered a decision which consisted of 39 findings of fact and granted the application subject to 16 additional conditions set forth therein. Petitioners contend that the decision in effect is a denial of the application because the conditions imposed are onerous and practically impossible of fulfillment. They argue further that the Board of Appeals was not authorized to impose the conditions because they were not consistent with the standards to be applied by the board on applications of this sort as outlined in the ordinance.
There is no doubt that the Board of Appeals may impose conditions in connection with permits which they are authorized to issue. Where this right is specified in the ordinance, the court on many occasions has upheld the inherent power of a Board of Appeals to impose reasonable conditions (Matter of Hopkins v. Board of Appeals, 179 Misc. 325; 2 Bathkopf, Law of Zoning and Planning, ch. 49). The standards set forth in the ordinance under review do not restrict this right. They refer rather to those matters to be considered initially upon a determination as to whether or not an application should be granted. If the Board of Appeals determines that the granting of a permit will be consistent with the spirit of the ordinance, it is authorized to grant the relief “ subject to such conditions and safeguards as it may prescribe in the public interest ” Building Zone Ordinance of the Inc. Village of Upper Brookville (§ 830.5 [3]).
Although a Board of Appeals might impose additional conditions to the granting of a permit, such conditions must be *580 reasonable; i.e., they must be directly related to and incidental to the proposed use of the property (Matter of Oakwood Is. Yacht Club v. Board of Appeals, 32 Misc 2d 677) and they must be sufficiently clear and definite so that the permittee is not left in doubt as to the extent of the use permitted (Matter of Pearson v. Shoemaker, 25 Misc 2d 591).
The court finds that there is no merit to the petitioners’ contention that it was prejudiced by one member of the Board of Appeals. A thorough examination of the record leads to the conclusion that the board member complained of was performing his duties in a diligent and knowledgeable manner. The members of the board are private citizens discharging a duty to the community, in this case to conserve it as a highly desirable residential area. In the discharge of their duties the board had to balance the rights of the petitioners and the interest of the community.
From the transcript of the hearing before the board, the findings made by the board, and the conditions accompanying the granting of the petitioners’ application, it would appear that several of the conditions imposed were unreasonable. Perhaps the board sought to accomplish by an imposition of these conditions not only the repair of the damage which was the subject of the application, but also the rehabilitation of damage caused by previous operations. These conclusions are supported by many of the findings which need not be enumerated here, except to say that they were not relevant nor material to the board’s decision.
This court is of the opinion that several conditions imposed by the Board of Appeals are unreasonable in light of the record before it. Conditions numbered 2, 4 and 5 should be considered together. These conditions are as follows:
“ 2. No sand, gravel, fill or other material may be removed from lot 887 nor from any other property within the Village owned by petitioners. ” * * *
“4. No contours shall be changed and no filling shall be performed on any part of lots 887 and 812 except in the said area.
“ 5. No slopes shall be created that are steeper than 1 on 2.” The plan of grading submitted by the petitioners upon their application for a zoning permit called for the creation of a slope which for the most part was 1 on 5; i.e., 1 foot vertical for each 5 feet horizontal. It was estimated that such a grade would involve the removal of 150,000 cubic yards of material from the subject property. Petitioners’ engineer testified that such a grade would provide a safe slope which could be stabilized within a reasonably short period of time. On the first hearing, *581 the Village Engineer testified that from an engineering standpoint a 1 on 5 slope was a desirable one, hut on a subsequent hearing he stated that a 1 on ,2 slope could also be stabilized though he conceded it might take several years to do so. The Planning Board found that a 1 on 2 slope was most advantageous for the village on this site. The Board of Appeals agreed with the Planning Board but determined that the petitioners would be permitted to establish a more gradual slope. The record seems clear that the establishment of a slope more gradual than 1 on 2 will necessitate the removal of fill from the subject property. However, in light of the prohibition against the removal of material contained in condition 2, the more liberal provisions specified in condition 5 is rendered meaningless. It has been argued by respondents that the material removed could be used to fill in other areas of the property. This is no answer to the problem because the decision itself prohibits such filling. Furthermore, the record presented to the court does not even show with certainty that a I on 2 grade can be established without the removal of material from this property.
This court accordingly finds that condition 5 is indefinite and that the Board of Appeals should state unequivocally what petitioners,shall be permitted to do upon their land.
In the event the Board of Appeals shall determine that a grade of 1 on 2 shall be established, it cannot then require petitioners to guarantee indefinitely that such a slope will be stable and not subject to erosion. The bond required of petitioners should, therefore, be conditioned only upon performance by petitioners of those specific items called for by the Board of Appeals and may not include a requirement that petitioners guarantee the stability of the slope.
Should it be found necessary, in complying with, the board’s ' directions, to remove fill, it does not follow that this would be a commercial activity within the village any more than it' would be in the event that the removal of fill were necessary in the course of construction of a private dwelling in accordance with the Building Ordinance of the village.
Another problem arises with respect to condition 12 which reads as follows: “12. Petitioners shall pay, at their own expense, the costs of the Village in having said plans and specifications reviewed and approved by the Building Inspector and the Village Engineers; petitioners shall also pay, at their own expense, the costs of having the Village Engineers inspect and approve the work to be performed in accordance with said plans and specifications, including periodic and final inspections for certifying to the completion of the project.”
*582 Respondents contend that this condition is customary upon applications of this sort. They cite no authority for such contention. It is the opinion of this court that the extent of the expenses to be incurred by the petitioners in connection with this requirement is too indefinite and uncertain as to be deemed reasonable. The authority for the imposition of these conditions cannot be found in the Building Zone Ordinance of the village. Section 810 of that ordinance describes the powers of the board and provides (810.4) that the board may prescribe conditions or restrictions as may be necessary to prevent or minimize adverse effects of a variance upon other property in the neighborhood, but these do not justify the imposition of conditions such as expressed in finding 12, supra.
Under the circumstances set forth herein, this matter is remanded to the Board of Appeals of the Incorporated Village of Upper Brookville with directions that it take such further steps as it may deem advisable to amend or alter its decision and to take further proof in conformity herewith. Settle judgment on notice.